# Case No: 15-3558

UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

**MARK MOORE, PLAINTIFF - APPELLANT**

**v.**

**HONORABLE MARK MARTIN**
**In his official capacity as Secretary of State for the State of Arkansas,**
**DEFENDANT-APPELLEE**

Appeal from U.S. District Court for the Eastern District of Arkansas
**Honorable James M. Moody, Jr., District Judge**
**District Court Case No. 4:14-cv-65-JM**

**BRIEF OF DEFENDANT-APPELLEE,**
**HONORABLE MARK MARTIN,**
**SECRETARY OF STATE,**
**IN HIS OFFICIAL CAPACITY**

**AJ Kelly**
**General Counsel and**
**Deputy Secretary of State**
**PO Box 251570**
**Little Rock, AR 72225-1570**
**Phone: (501) 682-3401**
**Fax: (501) 682-1213**

*Attorney for Appellee*

## SUMMARY OF THE CASE

Plaintiff-Appellant Moore challenged the date for filing independent candidate petition signatures in the State of Arkansas for a general election. The deadline was moved from May 1 to March 1 of an even-numbered year, with a general election on the first Tuesday after the first Monday in November. Moore initially filed as a prospective candidate for Lt. Governor in the 2014 election cycle, but failed to meet both signature and non-signature deadlines. Without amending his Complaint, Moore proceeded as a voter, and as a putative, prospective candidate for the 2018 elections.

On cross-motions for summary judgment, and after Plaintiffs stated on the record that there were no factual issues in dispute, the Trial Court granted Defendant-Appellee Secretary's motion. The Trial Court concluded that the movement of the deadline was justified by undisputed interests put forward by the State as justification for the extension. The minor change to the petition signature deadline was narrowly tailored to advance the State's interests in timely certifying independent candidates, as well as other candidates qualifying by petition and those promoting ballot initiatives. Plaintiffs failed to present evidence persuading the Court otherwise. No more than 15 minutes per side will suffice for oral argument, given the absence of disputed issues of material fact as stipulated in the Trial Court.

ii

# TABLE OF CONTENTS

PAGE

SUMMARY OF CASE AND POSITION ON ORAL ARGUMENT…    i

TABLE OF CONTENTS……………………………………………    ii

TABLE OF AUTHORITIES………………………………………    iv

STATEMENT OF THE CASE……………………………………    1

SUMMARY OF THE ARGUMENT………………………………    7

ARGUMENT………………………………………...............    8

STANDARD OF REVIEW …………………………………………    8

DISCUSSION ………………………………………………...    11

CONCLUSION……………………………………………………    30

CERTIFICATE OF SERVICE……………………………………    30

CERTIFICATE OF COMPLIANCE………..…………………..    31

Appellate Case: 15-3558    Page: 3    Date Filed: 02/23/2016 Entry ID: 4370810

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                   **Page**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ……………………….  27, 28

*Arutunoff v. Oklahoma State Election Bd.*,

    687 F.2d 1375 (10th Cir. 1982) ……………………………..   23

*Arthur v. King*, 500 F.3d 1335 (11th Cir. 2007),

    certiorari denied 552 U.S. 1040 ………………………………   29

*Beard v. Banks*, 548 U.S. 521 (2006) ………………………………..   9

*Berckeley, Inv. Grp. v. Colkitt*, 455 F.3d 195 (3rd Cir. 2006) ………   21

*Bogosian v. Woloohojian Realty Corp.*,

    323 F.3d 55 (1st Cir. 2003) …………………………………..   29

*Branson v. Mossberg & Sons*, 221 F.3d 1064 (8th Cir. 2000) ……….  8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ……………………….   9

*Fitz v. Dolyak*, 712 F.2d 330 (8th Cir. 1983) …………………………   8

*Gordon v. Shafer Contr. Co.*, 469 F.3d 1191 (8th Cir. 2006) …………  9

*Green Party of Arkansas v. Daniels*,

    73 F. Supp. 2d 1055 (E.D. Ark. 2010) ………………………  *passim.*

*Green Party of Arkansas v. Martin*, 649 F.3d 675 (8th Cir. 2011) …  *passim.*

*Hall v. Simcox*, 766 F.2d 1171 (7th Cir. 1985) ……………………..   19, 23

*Harrington v. City of Chicago*, 433 F.3d 542 (7th Cir. 2006) ………   29

*Langguth v. McCuen*, 30 F.3d 138 (8th Cir. 1994) (unpublished

    *per curiam*), *cert. denied,* 513 U.S. 1147 (1995)……………  *passim.*

*Lendall v. Bryant*, 387 F. Supp. 397 (E.D. Ark 1975) (Lendall I) ……  23, 24

*Lendall v. Jernigan*, Case No. LR-76-CV-184 (Lendall II) …………   24, 26

*Lendall v. Jernigan*, 424 F.Supp. 951 (E.D. Ark 1977) (Lendall III) …24, 25

*Lendall v. McCuen*, LR-C-88-311 (E.D. Ark. 1988) (Lendall IV) …...  22, 25

iv

*Libertarian Party of North Dakota v. Jaeger*,

     659 F.3d 687 (8th Cir. 2011) ………………………………   10

*Lubin v. Panish*, 415 U.S. 709 (1974) …………………………   12

*McLain v. Meier*, 851 F.2d 1045 (8th Cir. 1988) …………………   10

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) ……………   8

*Norman v. Arkansas Dept. of Educ.*,

     79 F.3d 748 (8th Cir. 1996) …………………………   29

*North River Ins. v. CIGNA Reinsurance Co.*,

     52 F.3d 1194 (3rd Cir. 1995) ……………………………   29

*Pratt v. Begley*, 352 F. Supp. 328 (E.D. Ky. 1970),

     *Aff''d*, 409 U.S. 943 (1972) ………………………………   12

*Pullman Standard Co. v. Swint*, 456 U.S. 273 (1982) …………………   9

*Reagan v. City of Piggott*, 805 S.W.2d 636 (Ark. 1991) ………………   21

*Roberson v. Phillips County Election Commission*,

     2014 Ark. 480 (2014) …………………………………   19

*Rock v. Bryant*, 459 F.Supp. 64 (E.D. Ark. 1978)

     aff'd, 590 F.2d 340 (8th Cir. 1978) ………………………   12

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1988) ……………   14

*Tashjian v. Republican Party of Connecticut*,

     479 U.S. 208 (1986) …………………………………   28

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)……   10, 22

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ….   9

*United States v. Fairchild*, 122 F.3d 605 (8th Cir. 1997) ………….....  7, 22

*United States v. Geranis*, 808 F.3d 723 (8th Cir. 1987) ………..……   14

*Vadnais, Treasurer of Swift County v. Federal National Mortgage*

     *Ass'n,* 754 F.3d 524 (8th Cir. 2014) ………………………   20

v

Appellate Case: 15-3558    Page: 5    Date Filed: 02/23/2016 Entry ID: 4370810

*Van Horn v. Martin, Secretary of State,* ___ F.3rd ___,

    No. 15-1710 (8th Cir. February 11, 2016) …………………… 7, 9, 22

## RULES

Fed. R. Civ. P. 52 …………………………………           9

Fed. R. Civ. P. 56 …………………………………      *passim.*

Fed. R. Civ. P. 59 …………………………………     6, 29

Fed. R. Civ. P. 61 …………………………………    29

Fed. R. Evid. 704 ……………………………..      21

## STATUTES

U.S. Const. Art. I, § 4, cl 1 …………….….…………………   *passim.*

 42 U.S.C. § 1983 …………………………………….   *passim.*

UOCAVA Act, 52 USC § 20301 *et seq*…….……………………..  *passim.*

MOVE Act, 52 USC § 20302 *et seq*.……………………………… *passim.*

Ark. Code Ann. § 7-5-111 ……………………………………   19

Ark. Code Ann. § 7-5-205 ……………………………………   13

Ark. Code Ann. § 7-5-405 ……………………………………   19

Ark. Code Ann. § 7-5-406 ……………………………………   19

Ark. Code Ann. § 7-5-418 ……………………………………   19

Appellate Case: 15-3558    Page: 6    Date Filed: 02/23/2016 Entry ID: 4370810

Ark. Code Ann. § 7-7-101 …………………………………………… 2

Ark. Code Ann. § 7-7-102 …………………………………………… 12

Ark. Code Ann. § 7-7-103 ………………………………… *passim.*

Ark. Code Ann. § 7-7-203 ………………………………… 2, 13

Ark. Code Ann. § 7-7-205 ………………………………… 13, 17

Ark. Code Ann. § 7-10-103 …………………………………………… 19

Ark. Code Ann. § 14-42-206 ………………………………… 19

Act 1356 of 2013, Acts of Arkansas ………………………… *passim.*

Appellate Case: 15-3558     Page: 7     Date Filed: 02/23/2016 Entry ID: 4370810

## STATEMENT OF THE CASE

Plaintiff-Appellant Mark Moore claimed to be an independent candidate for Lieutenant Governor of the State of Arkansas for the 2014 general election. (Jt App. 7, 263). Arkansas Code Annotated § 7-7-103(a)(1) requires Independent Candidates running for office to file the following during the Party Filing Period with the appropriate office: a Political Practices Pledge, an Affidavit of Eligibility, the required petition signatures, and a Notice of Candidacy. (Joint App. 77-78, 264). However, Appellant Moore's filing with the Secretary of State was deficient. He failed to file an executed Notice of Candidacy (Jt. App. 48, Jt. App. 75). In addition, he failed to tender any signatures in support of his independent candidacy, in contravention of Arkansas law. (Jt. App. 49, Jr. App. 75).

Due to changes in federal law (UOCAVA and MOVE Acts), and the election experiences of the 2010 and 2012 election cycles, (among other reasons), the Arkansas Legislature amended Ark. Code Ann. § 7-7-103 in Act 1356 of 2013. (Jt App. 40, 75-76, 242-244). This Act moved the deadline for independent candidates to file their petition signatures from May 1 to March 1 (or the following Monday if March 1 fell on a weekend). (Joint App. 40). In 2014, Independent Candidates had to file petition signatures and other required forms during the Party Filing Period, which ran from February 24, 2014 at noon until March 3, 2014 at noon. (Joint App. 40, 75-76, 264).

1

The Certification deadline for the Secretary of State to certify names of all candidates to the County Boards of Election Commissioners for all seventy-five counties in the state, for the November general election, was August 21, 2014. (Joint App. 75-76, 182). Absentee Ballots were delivered to military voters by electronic delivery on September 19, 2014 to meet federal requirements of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). (Joint App. 75-76, 182). The General Election was on November 4, 2014, and the Official Tabulation of the Results were certified by the Secretary of State on November 20, 2014. (Jt App 75-76, 129, 182).

Appellant Moore and his co-Plaintiffs filed suit on February 6, 2014, to challenge the petition signature deadline of Monday, March 3, 2014 as applied to Plaintiffs as Independent Candidates for the 2014 General Election and all subsequent General Elections. (Joint App. 7, 263). Appellant alleged that the filing deadline was vague and created harm, as it required gathering signatures in potentially bad weather. Appellant based his Complaint upon purported violations of the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983. (Joint App. 9, 263). Appellant sought to declare A.C.A. §§ 7-7-101, 7-7-103, and 7-7-203(c)(1) illegal and unconstitutional as applied to the facts. (Joint App. 9, 15, 263). In the Complaint, Appellant also requested a preliminary and permanent injunction to place Appellant and co-Plaintiff's names on the ballot

Appellate Case: 15-3558    Page: 9    Date Filed: 02/23/2016 Entry ID: 4370810

as independent candidates for their respective offices for the 2014 General Election. (Joint App. 15-16, 263).

Neither Appellant Moore, nor any of his co-Plaintiffs, took any action to obtain any relief prior to the 2014 General Election.

By the deadline of the Party Filing Period, Appellant Moore had filed a Political Practices Pledge, and an Affidavit of Eligibility, but failed to tender signature petitions for office of Lieutenant Governor. (Joint App. 48, 75, 264). On the last day of filing (March 3, 2014), Appellant Moore submitted an unsigned Notice of Candidacy. (Joint App. 48). Appellant Moore failed to submit any Petition Signatures, and signed an acknowledgement on March 03, 2014, stating he did not submit any petition signatures. (Joint App. 49, 264). Appellant Moore's Responses to Requests for Admissions and separate Affidavit stated he "refused to comply with the petition signature deadline." (Joint App. 55-60, 197-199).

The Total votes cast for candidates for Governor in 2010 was 781,333. (Joint App. 242). For calculating the petition signatures required for a state-wide candidate, you take three percent (3%) of that number, which is 23,440. *Id.* However, the statutory maximum amount of signatures Appellant Moore would have had to collect to run for a state-wide office was 10,000 signatures, i.e., 1.28%, significantly lower than then three percent (3%) statutory requirement. *Id.*

3

Appellee-Secretary of State notified Appellant-Moore by letter dated March 7, 2014, that his attempted filing was insufficient, that he failed to sign his Notice of Candidacy, failed to tender any Petition Signatures, and would not be certified to the County Boards of Election Commissioners as a candidate for the November 2014 general election. (Joint App. 50). Appellant-Moore did not tendered any petition signatures at any time during this case. (Joint App. 55-56, 77).

Appellee-Secretary filed a Motion for Summary Judgment on November 26, 2014 (Joint App. 51), i.e., after the 2014 general election had been held and no Plaintiff had requested or obtained preliminary relief. Appellee Secretary filed a statement of material facts not in dispute (Jt. App. 175-184), as well as an Affidavit in Support (Jt. App. 75-76).

On the last day of the scheduling Order, Plaintiffs moved for Summary Judgment on May 13, 2015, more than a year after filing the case. (Jt. App. 218). In Plaintiffs' Motion, they brought up for the first time that Appellant Moore intended to run for Lieutenant Governor in the 2018 cycle (which is not pleaded in his Complaint). (Joint App. 198).

Appellee Secretary responded to Plaintiff-Appellant's Motion for Summary Judgment, setting forth a statement of undisputed material facts, in accordance with the Local Rules. (Jt. App. 245-257) Appellee Secretary further objected to Plaintiff-Appellant's statement of facts, setting forth the legal basis why Plaintiffs'

4

statement of facts, largely based upon speculative testimony of a purported "expert witness" should not be considered. (Jt. App. 259-262). Appellee Secretary also set forth an additional affidavit of the Director of Elections, Rob Hammons. Jt. App. 242-244. In his response, Appellee-Secretary explicitly asked the Court to enter summary judgment on the merits in favor of Defendant Secretary. Jt. App. 239-240.

The Court heard oral argument on July 27, 2015. Jt. App. 286 (beginning of transcript). At oral argument, Defendant-Appellee Secretary indicated that disputed issues of material fact – as suggested by Plaintiffs in their argument – might be an issue. After extensive colloquy, Jt. App. 322-28, the Court asked Plaintiff-Appellant's counsel:

> **Court:     Do you agree that at this point in the case it's a question of law and not of fact?**
>
> **Mr. Linger:  Yes, Your Honor.**

Jt. App. 328 (Transcript of Hearing at Page 43). In other words, Plaintiff-Appellant, through counsel, conceded that there were no disputed issues of material fact at the hearing before the Trial Court.

On August 25, 2015, the Trial Court granted Appellee-Secretary's Motion for Summary Judgment on the merits of the constitutionality of the change in the filing deadline for petition signatures for independent candidates. (Jt. App. 263-75). Plaintiff-Appellant's Motion for Summary Judgment was denied. (Joint App.

5

275). Judgment entered in favor of Appellee-Secretary on August 25, 2015. (Joint App. 276).

In its Order, the Court explicitly set forth the difficulties in election administration that arose after enactment of the federal UOCAVA and MOVE Acts.  Jt. App. 273-274.  The Court articulated explicit reasons why the minor change in the filing deadline was necessary as a result of the arguments articulated for the extension made by Defendant-Appellant Secretary.  Jt. App. 274-275.

Plaintiffs filed a Motion to Reconsider and Alter or Amend Judgment under Rule 59(e), FRCP, on September 22, 2015. (Joint App. 277). Plaintiff's motion was denied on October 7, 2015. (Joint App. 283). The court found that the Motion only restated the arguments "thoroughly considered and rejected by this Court in its previous consideration of Plaintiff's Motion for Summary Judgment." (Joint App. 283). No manifest errors of law or fact were found, nor was there newly discovered evidence. (Joint App. 283).

Plaintiff-Appellant Mark Moore filed a Notice of Appeal on November 6, 2015, to challenge both the denial of Plaintiff's Motion to Reconsider (Joint App. 283) and the Order and Judgment of August 25, 2015 (Joint App. 263, 276). (Joint App. 284).

Appellate Case: 15-3558     Page: 13     Date Filed: 02/23/2016 Entry ID: 4370810

## SUMMARY OF THE ARGUMENT

Defendant-Appellee Secretary asks the Court to affirm the District Court's Orders and Judgment.  The matter was decided on cross-motions for summary judgment, with Plaintiff-Appellant's counsel explicitly stating that the matter should be decided only as a question of law, and not as a question of fact.  The Trial Court was correct to consider the effects of federal law, UOCAVA and MOVE Acts, upon the relevant deadlines.  Plaintiff-Appellant did nothing to dispute the application of that federal law.  The Trial Court was correct to consider a later-heard Eighth Circuit Case, *Langguth v. McCuen, Secretary of State*, 30 F.3d 138 (8th Cir. 1994) (unpublished), which Plaintiff-Appellant failed to distinguish.

The Trial Court correctly applied Eighth Circuit precedent in its consideration of the constitutionality of the filing deadline.  *Green Party of Arkansas v. Martin*, *Secretary*, 649 F.3d 675 (8th Cir. 2011); *affirming*, *Green Party of Arkansas v. Daniels, Secretary*, 733 F.Supp.2d 1055 (E.D. Ark. 2010).  There was no harm to Appellant for the Court's discounting the disputed affidavit of Plaintiff's purported "expert" witness.  *Van Horn v. Martin, Secretary*, ___ F.3d ___, No. 15-1710, *slip op. at 4* (8th Circ. February 11, 2016) ("district court did not abuse its discretion in discrediting the affidavit by the trustee as "speculating") *citing*, *United States v. Fairchild*, 122 F.3d 605, 613 (8th Cir. 1997).

7

# ARGUMENT

## STANDARD OF REVIEW

A presumption of constitutionality attaches to state legislative enactments; Plaintiff-Appellant faces a heavy burden in seeking to challenge the constitutionality of statutes under this standard. *Fitz v. Dolyak*, 712 F.2d 330, 333 (8th Cir. 1983); (See also *Branson v. O.F. Mossberg & Sons, Inc.*, 221 F.3d 1064, 1065 n.4 (8th Cir. 2000). "The States possess a broad power to prescribe the Times, Places, and Manner of holding Elections for Senators and Representatives, [U.S. Const.] Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Green Party of Arkansas v. Martin*, 649 F.3d 675, 680 (8th Cir. 2011) (*citations omitted*). Access to the ballot affects associational rights under the First and Fourteenth Amendments to the U.S. Constitution. "These associational rights, however, are not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986).

Summary judgment is properly granted when the moving party establishes that no genuine issues of material fact exist and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

8

upon which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party opposing summary judgment "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The opposing party also cannot rely solely on bare assertions, conclusory allegations, or mere suspicions. *Gordon v. Shafer Contr. Co.*, 469 F.3d 1191, 1195 (8th Cir. 2006) ("bare assertions are insufficient to avoid summary judgment"); *see Van Horn v. Martin, Secretary*, ___ F.3d ___, No. 15-1710, *slip op. at 4* (8th Circ. February 11, 2016) ("district court did not abuse its discretion in discrediting the affidavit by the trustee as "speculating"). At the summary judgment stage, the Trial Court draws "all justifiable inferences" in favor of the non-moving party; in doing so, however, the Court must distinguish between evidence of disputed facts and disputed matters of professional judgment. *Beard v. Banks*, 548 U.S. 521, 529-30 (2006). The District Court's findings of fact – particularly on stipulation that there are no disputed issues of fact - are overturned only if clearly erroneous. Fed. R. Civ. P. 52(a); *see Pullman-Standard Co. v. Swint*, 456 U.S. 273, 293 (1982).

In a ballot access case, specifically, the Court must first determine whether the challenged laws "freeze the status quo by effectively barring all candidates

9

other than major parties," or whether "a reasonably diligent candidate [could] be expected to satisfy the requirements." *McLain v. Meier*, 851 F.2d 1045, 1050 (8th Cir. 1988). If diligent candidates are able to meet the ballot access standards, the requirements are constitutional, even if 'necessarily arbitrary.'" *Libertarian Party of North Dakota v. Jaeger*, 659 F.3d 687, 694 (8th Cir. 2011).

The Court must weigh the character and magnitude of the rights asserted by Plaintiff-Appellant against the precise interests put forward by Defendant-Appellee as justification for imposing the minor change in the deadline, taking into consideration the extent to which Defendant-Appellee's interests make it necessary to burden constitutional rights. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997). It is not a bright-line test. *Id.* The correct standard to apply to "lesser burdens" trigger less exacting review than strict scrutiny; a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. *Green Party of Arkansas v. Daniels*, 733 F. Supp. 2d at 1059. The challenged ballot provisions afford "essential equal opportunity for ballot qualification." *Libertarian Party of North Dakota*, 659 F.3d at 694; (*see also, Green Party of Arkansas v. Martin, Secretary of State*, 649 F.3d 675, 680, 685-686 (strict scrutiny is not applied when imposed burdens are not severe) (challenge to third-party candidate ballot access standards in Arkansas).

10

## **DISCUSSION**

This is a ballot access case where the Appellant failed to meet statutory requirements necessary to gain access to the ballot. Those statutes in question are constitutional on their face and as applied against Appellant Mark Moore ("Appellant Moore"). Appellant failed to distinguish later, directly-applicable, albeit unpublished, Eighth Circuit precedent involving the Arkansas Secretary of State. Appellant also failed to distinguish the legitimate requirements imposed upon Appellee Secretary of State by revisions to federal law (UOCAVA and MOVE Acts).

Appellant Moore sought to have his name printed on the November 4, 2014 General Election ballot in the State of Arkansas as an "Independent Candidate" for the office of Lieutenant Governor. In his Complaint, Appellant Moore challenged only the timing of the requirement that Independent Candidates submit their petition signatures in order to qualify to have their names printed on the ballot. Appellant Moore failed to meet other statutory requirements necessary to obtain access to the ballot. Moore's subsequent affidavit, while not plead, asserting a purported 2018 candidacy for Lt. Governor of the State of Arkansas, does not change the outcome.

11

Appellant Moore failed to follow the requirements for gaining access to the ballot as an Independent Candidate for the office of Lieutenant Governor. A plaintiff required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit (ballot access) who fails to do so, lacks the diligence required to prevail, because he should have at least taken steps to attempt to satisfy that precondition to ballot access. It is Plaintiff-Appellant's burden to show, on the face of a valid Complaint, that he has met the diligence required, and that he is entitled to the relief he seeks. As Appellant's own case law states, Appellant Moore had to show that he was a serious candidate who had been "reasonably diligent" in order to invoke the power of the federal district court. *Rock v. Bryant*, 459 F.Supp. 64, 73 (E.D. Ark. 1978) citing, *Lubin v. Parish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974) and *Pratt v. Begley*, 352 F.Supp. 328, 330 (E.D.Ky. 1970), aff'd 409 U.S. 943, 93 S.Ct. 282, 34 L.E.2d 214 (1972). Appellant was not diligent.

The State of Arkansas provides four routes for potential candidates to have their names counted on the general election ballot. First, candidates who are members of a "political party" can be nominated by majority vote at a primary election held by the political party. Ark. Code Ann. §7-7-102. Second, candidates that do not belong to a "political party" have the opportunity to satisfy the lesser burden of securing the signatures of 10,000 registered voters on a petition to be

12

recognized as a new political party during the current election cycle. Ark. Code Ann. §7-7-205. Third, a candidate may file for political office as an independent candidate, as discussed above. Ark. Code Ann. §7-7-103. Fourth, a person may file as a "write-in" candidate, by merely notifying specified public officials and the respective county boards of election commissioners in each county where the write-in candidate contests an office. Ark. Code Ann. § 7-5-205.

Each of the four avenues to the general election ballot requires each respective candidate to file a political practices pledge and complete all other prerequisites during the party filing period, February 24, to March 3, 2014. Ark. Code Ann. §7-7-103; Ark Code Ann. §7-7-203(c).

Appellant Moore had to show that he actually filed or attempted to file for the office he claimed to seek, during the appropriate time frame, February 24 to March 3, 2014. As a candidate "desiring to have his ... name placed upon the ballot as an independent candidate without political party affiliation for any ... state, [or] county ... office in any general election in this state," Appellant Moore must have filed:

> during the party filing period for the year in which the election is to be held, a ***political practices pledge***, an ***affidavit of eligibility***, the ***petition under this section***, and ***a notice of candidacy*** stating the name and title the candidate proposes to appear on the ballot and identifying the elective office sought, including the position number, if any."

Ark. Code Ann. §7-7-103(a)(l). (emphasis added).

By the end of the Party Filing Period, Appellant Moore filed his Political Practices Pledge and an Affidavit of Eligibility. However, he failed to sign his Notice of Candidacy during the party filing period. (Joint App. 48, 49).

Additionally, Appellant Moore signed an acknowledgment on March 3, 2014 that he did not submit any petition signatures, and subsequently stated in his Affidavit that he "refused to comply with the petition signature deadline." (Joint App 49, 55, 197-198). Other than the "petition requirement," and in particular the timing of the filing of petitions, Appellant Moore did not challenge the other filing requirements for independent candidates in the State of Arkansas.

Even if given the relief he seeks, Appellant Moore still failed to provide petition signatures by the prior deadline of May 1st, and failed to sign his Notice of Candidacy prior to the end of the Party Filing Period. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *U.S. v. Geranis*, 808 F.3d 723 (8th Cir. 2015) citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003 (1998).

The recently revised Arkansas election calendar has not been an impediment to other similarly situated candidates. Defendant-Appellee showed that a diligent candidate successfully petitioned to run for the office of State Senate in 2014. Jt. App. 243(Affidavit: showing George Pritchett ran as independent for State Senate).

14

The deadlines for filing all relevant documents to qualify any and all candidates for the November, 2014, General Election ballot for all state and county candidates was changed to the end of the Party Filing Period, March 3, 2014, during the 2013 legislative session. Act 1356, Acts of Arkansas 2013, codified at Ark. Code Ann. §7-7-103 (changing only the deadline for filing petition signatures for independent candidates to "beginning of party filing period" or March 1, from May 1). The revision by the Arkansas legislature, as stated by Appellee Secretary, was:

> to harmonize Arkansas law with applicable federal law; to improve election administration; to assist Independent Candidates in receiving timely review of their petition signatures in advance of other (non-state) filing deadlines (for example, allowing them to file for another non-state office should they have an insufficient number of valid signatures of registered voters on their petitions); to allow time for litigation of any petition signature challenge in advance of the earlier deadline for certification of names to the general election ballot; to provide UOCAVA voters (military and overseas) with the correct ballot in a timely fashion, i.e, no later than forty-six (46) days prior to the general election; to avoid the "wait and see" attitude of candidates who tender insufficient documents to see who might win the primary as well as which "non-standard" candidates might be nominated by minor parties that qualify for placement of all of their candidates on the ballot; to protect the integrity of the ballot process for the general election; to encourage compromise and political stability; to attempt to insure that the general election winner will represent a majority of the community; to attempt to avoid general election runoffs, given the complications that arise with a forty-six (46) day absentee ballot delivery requirement where the runoff is normally no more than twenty-one (21) days after the general election; and to provide the electorate with a ballot that will eliminate or reduce voter confusion.

15

(Joint App. 242-244 (Affidavit of Hammons)). This was not disputed by Plaintiff-Appellant.

Moreover, Appellant Moore did not dispute Defendant-Appellee Secretary's reliance upon changes in federal law as requiring, in part, that applicable deadlines be moved closer to the beginning of the year. UOCAVA, 52 U.S.C. § 20301, *et seq.*; and MOVE, 52 U.S.C. § 20302(a)(8) (delivery of out of jurisdiction ballots to military voters required at least 45 days prior to general election).

Contrary to Plaintiff-Appellant's assertions, a record number of candidates filed signature petitions in 2014, after collecting those signatures during the sixty (60) day "nonpartisan" signature collection period from November 10, 2013, to January 9, 2014. A total of 92 candidates filed by petition for the nonpartisan general election; and a total of 90 of those candidates' petitions were sufficient to grant the candidates access to the ballot without payment of a filing fee. During the 45-day review period, Secretary of State processed 103,578 signatures collected during that sixty day time period ending January 9, finding 67,608 of the signatures to be valid and within the correct geographic limit for the respective candidates. (Joint App. 242, ¶ 10 ).

Defendant Appellee submitted substantial evidence that collecting signatures during the months of November and December of 2013, and

16

January of 2014, was easily done by 90 separate nonpartisan candidates, who submitted a total of 103,578 signatures collected by January 9, 2014. (Joint App. 242). Candidate Pritchett's successful collection of signature from December 3, 2013, to March 3, 2014, also shows that a "reasonably diligent" candidate can easily meet the revised statutory deadline and the very minimal signature requirement for access to the General Election ballot.

In addition, both the Green Party, and the Libertarian Party, successfully qualified to have all of their candidates listed on the General Election ballots in both 2012 and 2014. (Joint App. 242). Their petition period has no begin date, and only requires 10,000 valid signatures of registered voters, collected within ninety (90) days prior to submission. Notably, however, the deadline to file their signature petitions was also moved to December 26, 2013 for the 2014 General Election. Ark. Code Ann. § 7-7-205(a)(6). Both parties met the new statutory deadline and qualified by petition, showing that petition signature collection nearly identical to the requirement for an independent candidate for statewide office, like Lieutenant Governor, can easily be done in this State. (Joint App. 242).

Plaintiff-Appellant Moore also failed to distinguish directly-applicable Eighth Circuit precedent that post-dates the cases cited in his Brief. This case

17

follows a long line of similar challenges to Arkansas ballot access and election law, where the court has declined to apply strict scrutiny, but has instead established the weighing of competing interests at stake. *See, e.g., Green Party of Arkansas v. Martin*, 649 F.3d 675 (8th Cir. 2011), *rehearing and rehearing en banc denied* (upholding Arkansas law requiring new political party to achieve minimum of three percent (3%) of votes cast for governor or president in order to maintain "party" status).

Defendant Appellee Secretary does not "move" election deadlines at whim. He complies with statutory requirements, and otherwise complies with applicable constitutional, federal, and state law. Defendant Secretary complies with applicable Court precedent, as well. In the instant case, the Eighth Circuit Court of Appeals explicitly approved the Arkansas statutory provisions in question, albeit prior to the amendment, although Plaintiffs argue otherwise. In *Langguth v. McCuen, Secretary of Stat*e, 30 F.3d 138, No. 93-3413 (8th Cir. August 9, 1994) (unpublished *per curiam* ), *cert. denied*, 513 U.S. 1147 (1995), the Eighth Circuit concluded that:

> [R]estrictions such as those required by Arkansas's [independent candidate filing] statute appear to be necessary to meet Arkansas's compelling state interests. We do not find the Arkansas statute's requirements facially unreasonable or overly burdensome for a candidate to meet, and Langguth did not present evidence persuading us that they are in practice unreasonable or overly burdensome.

18

*Langguth*, slip Op. at 3. Plaintiff-Appellant Moore did not dispute or address this case.

There have been multiple reasons for the State of Arkansas, and its General Assembly, to move election law deadlines. Among those reasons are the following: (1) two substantial changes in federal law (UOCAVA and MOVE Act, *supra);* (2) the beginning of early voting at least two weeks before the "preferential primary election" in May of even numbered years, Ark. Code Ann. Sec. 7-5-418(a)(l)(A); (3) the beginning of absentee voting at least sixty (60) days before the preferential primary election, Ark. Code Ann. Sec. 7-5-405(a)(l); (4) the beginning of military and overseas voting at least 46 days before the preferential primary, *including an instant run-off for the general primary election,* Ark. Code Ann. Sec. 7-5-406; (5) the existence of another filing deadline for independent candidates for municipal offices running party-affiliated primaries, Ark. Code Ann. Sec. 14-42-206(d)(l)(A), combined with the statutory prohibition on appearing on the ballot more than one time at any general election, Ark. Code Ann. Sec. 7-5-111, *Roberson v. Phillips County Election Commission,* 2014 Ark. 480 (2014); and (6) independent candidates in Arkansas can qualify for the ballot as write-in candidates, obviating any need for petition signatures, Ark. Code Ann. 7-10-103(d), *Hall v. Simcox,* 766 F.2d 1171 (electoral regulatory scheme must be viewed in its entirety, and

19

existence of availability of write-in access to the ballot is one of the essential considerations for ballot access cases).

Superseding, intervening causes - like a change in federal law - are valid bases for the General Assembly to make changes to Arkansas State law, even in the face of lower court's declaratory actions. *See, Vadnais, Treasurer of Swift County v. Federal National Mortgage Ass 'n,* 754 F.3d 524, (8th Cir. 2014). The declaratory relief previously granted in earlier cases must be viewed in light of the entirety of Arkansas's current statutory scheme, the results in *Langguth,* as well as relevant federal law, substantially moving all election law deadlines so as to provide for better ballot delivery to military and overseas voters. The Court must also consider the valid interests set forth by Defendant for the minimal change in the date required for filing petition signatures. Jt. App. 242-244.

More explicitly, and contrary to Plaintiffs' allegations and "expert witness affidavit," the Eighth Circuit Court of Appeals concluded that Arkansas's election administration requirements "are compelling:" requiring a candidate to show some support before printing the candidate's name on the ballot, and in having enough time both to certify that the names on the signature petitions are registered voters and to permit the authenticity of the signatures to be challenged in court proceedings. *Langguth*, slip op. at 2. *Langguth* approved the Arkansas statutory scheme then in effect, that ended the time period for collecting signatures "30 days

20

before the primary and 186 days before the general election." *Id.* Since *Langguth*, Arkansas has changed its election calendar on multiple occasions. Arkansas has also made it easier for Independent Candidates to collect the required signatures, by expanding the time period for collecting signatures from "60 days" (as approved in *Langguth*) to the current 90 days. Ark. Code Ann.§ 7-7-103(b)(3).

The Court was entitled to discount the unsupported Affidavit of Appellant's so-called "expert" witness. First, the "opinion" of Appellant's "expert" is merely a recitation of case law, without legal analysis, and so was not entitled to any deference. Legal conclusions, which require the application of law to the facts, are the province of this Court, and are not left to the province of the trier of fact. *See*, *Reagan v. City of Piggott*, 805 S.W.2d 636, 637 (Ark. 1991) (conclusion of law that are in dispute do not meet the moving party's requirements to show that there are genuine issues of material fact for a fact-finder to determine); Fed. R. Evid. 704; *Berckeley, Inv., Grp. v. Colkitt* 455 F.3d 195, 271 (3rd Cir. 2006) (expert witness prohibited from rendering a legal opinion dictating outcome on ultimate issue).

Consequently, the affidavit of Appellant's "expert" did not and does not create an issue of fact that precluded entry of judgment for Appellee on Defendant Appellee's Motion for Summary Judgment. Nor is the Affidavit of the "expert" entitled to any deference, because it does not accurately set forth all of the relevant

21

case law, missing, most importantly, any reference to *Langguth*, i.e., a case

involving the predecessor in interest to Defendant. *See Van Horn v. Martin,*

*Secretary*, ___ F.3d ___, No. 15-1710, *slip op. at 4* (8th Cir. February 11, 2016)

("district court did not abuse its discretion in discrediting the affidavit by the

trustee as "speculating") *citing*, *United States v. Fairchild*, 122 F.3d at 613.

The "Constitution does not require that [Arkansas] compromise the policy

choices embodied in its ballot-access requirements to accommodate" an

independent candidate's strategy. *Green Party of Arkansas*, 649 F.3d at 683,

*quoting Timmons*, 520 U.S. at 365. "… Arkansas need not collapse every barrier

to ballot access." *Green Party of Arkansas*, 649 F.3d at 683. When "Arkansas's

electoral scheme is read in its entirety, achieving ballot access is far from an

impossible task." *Green Party of Arkansas*, 649 F.3d at 684 (decision under prior

law) (citations omitted). The United States Supreme Court and the Eighth Circuit

have "repeatedly upheld reasonable, politically neutral regulations that have the

effect of channeling expressive activity at the polls." *Green Party of Arkansas*, 649

F.3d at 685-86 (citations omitted).  This case is no different.

Appellant erroneously relies upon the Memorandum and Opinion from

*Lendall v. McCuen* as a case that favors his set of facts. LR-C-88-311 (ED Ark.

1988) (Appellant's *Lendall IV*). That case follows several other cases involving

attempts by Jim Lendall to run as an Independent Candidate for various offices.

Subsquent case law, and intervening federal statutory law, show that Appellant's reliance upon these out-of-date cases is unavailing. Defendant should not be penalized for formerly having had a later filing date for petition signatures, whether or not that date was the product of previous litigation, otherwise, an arbitrary difference will be created among the states. In other words, a constitutional ratchet is unacceptable. *Hall v. Simcox,* 766 F.2d 1171, 1175 (7th Cir. 1985); *Arutunoff v. Oklahoma State Election Bd.,* 687 F.2d 1375, 1380 (10th Cir. 1982).

### *LENDALL v. BRYANT*, 387 F.Supp 397 (E.D. Ark. 1975) (*LENDALL I*)

Jim Lendall attempted to run for office as an Independent Candidate for a seat in the state legislature in the 1974 General Election. *Lendall v. Bryant*, 387 F.Supp. 397 (E.D. Ark. 1975). Lendall was required to file a pledge and petitions signed by no fewer than fifteen (15) percent of the qualified electors of the State or subdivision. 387 F.Supp. at 400. While the court looked at the deadline and petition requirements as coupled, the court was "of the opinion that the 15 percent requirement itself is unreasonably oppressive and restrictive." 387 F.Supp. at 402.

As part of the court's reasoning, it looked to the fact that officially recognized political parties only needed seven percent of the number of persons who voted for Governor or Presidential Electors in the preceding general election,

and could maintain its status as long as it received at least seven percent of the total votes cast in gubernatorial or presidential elections. *Id.* at 403. Thus the code section in question was ruled "unconstitutional as applied to independent candidates for State, district, county, and township offices, including the plaintiff [Lendall]." *Id.*

### *LENDALL v. JERNIGAN*, LR-76-C-184 (E.D. Ark. 1976) (*LENDALL II*)

In 1976, Lendall then filed suit challenging the filing deadline for independent candidates, which was noon on the first Tuesday in April. *Lendall v. Jernigan*, 424 F.Supp. 951, 952 (ED Ark. 1977) referencing *Lendall v. Jernigan*, LR-76-C-184 (ED Ark. 1976).

The three-judge court in that case (LR-76-C-184) concluded the filing deadline for independent candidates for district offices was unconstitutional, "generally for the same reasons that were cited as the bases of the Court's decision in *Lendall v. Bryant*." 424 F.Supp. at 952. Their per curiam memorandum stated:

> the Court is here holding ***only*** that the presently established filing deadline for independent candidates for ***district office*** is unconstitutional. However, we do not wish to indicate by our opinion that we believe the petition requirements enacted by the General Assembly in 1975 would withstand a constitutional attack."

424 F.Supp. at 952, citing LR-76-C-184 (emphasis added).

*LENDALL v. JERNIGAN*, 424 F.Supp. 951 (E.D. Ark. 1978) (*LENDALL III*)

In 1977, Lendall's third case focused on the ten percent of qualified electors petition requirement established by Act 700 of 1975. 424 F.Supp. at 952. Lendall had submitted around 250 signatures, of which 119 were certified by the Secretary of State. *Id.* However, 853 signatures were required to run for then Senate District 3 in Pulaski County, Arkansas. *Id.* at 953. In declaring the requirement for state senatorial districts unconstitutional, the court found that "a reasonably diligent independent candidate, especially a poor person, could not reasonably be expected to satisfy the ten percent requirement" in the 60-day period. *Id.* at 958. Additionally, the court compared independent candidate requirements for state office to requirements for municipal office, which was "much less rigorous." *Id.* at 958. Furthermore, the State failed to bring forth evidence to support their argument that the ten percent requirement was necessary to vindicate any State interest that was asserted.

*LENDALL v. McCUEN*, LR-C-88-311 (E.D. Ark. 1988) (*LENDALL IV*)

Finally, in 1988 Jim Lendall sought injunctive and declaratory relief over his bid to run as an independent candidate for State Representative in then District 61 of the Arkansas General Assembly. *Lendall v. McCuen*, LR-C-88-311, at 1 (ED Ark. 1988). That year the filing period for Independent Candidates began on

25

December 22, 1987 and ended on January 5, 1988 (by Act 123 of 1987). *Id.* at 3. Plaintiff Lendall submitted nearly 800 signatures to the Secretary of State on April 28, 1988. LR-C-88-311 at 4. While Plaintiff submitted the appropriate number of signatures, he submitted them after the filing period. *Id.* The Secretary of State was ordered to accept Lendall's signatures and place his name on the ballot for the 1988 General Election. (LR-C-88-311 at 6).

The court stated the binding precedent was in *Lendall v. Jernigan*, No. LR-76-C-184, aff'd mem., 433 U.S. 901 (1977) (*Lendall II*)(this case was not provided to Appellee Secretary). The court concluded that because of the Lendall II decision, "a filing deadline in early April is unconstitutional," but also that the decision "does not extend beyond these facts and the parties to this case" as the Defendant "now" had several additional legal and factual arguments to resist such filings. *Id.* at 6.

<u>*Langguth v. McCuen*, 30 F.3d 138 (8th Cir. 1994)</u>

As previously shown, *Langguth* obviates Appellant's reliance upon the earlier-cited cases. This case is never distinguished in any way by Appellant, *Langguth v. McCuen*, 30 F.3d 138 (8th Cir. 1994) (unpublished *per curiam*). The modest revision to the deadline, moving it from May 1 to March 1, is narrowly tailored to advance the State's interest in timely certifying independent candidate who wish to be placed on the ballot by petition, allowing time for those who seek

26

to challenge those signatures through litigation, and providing additional time to those who seek to promote ballot initiatives to have signatures reviewed and litigation concluded prior to the new certification deadline in view of UOCAVA and MOVE, and other election administration necessities specific to Arkansas, such as the constitutional petition requirements.

> As the District Court stated:

> [I]n light of the increase in non-independent candidates filing petitions, instead of paying filing fees as before, and the increased number of initiative petitions, there is simply not enough time to process all of the petitions within the May 1 (previous) deadline. This fact, coupled with the time consumed by ever-increasing litigation over petitions has necessitated the extension of the deadline to March 1 (from May 1).

Jt. App. 274-75.

Plaintiffs' other cases are also distinguishable, in multiple ways. First, *Anderson v. Celebrezze,* 460 U.S. 780 (1983), concerned an Ohio statute on independent candidates running for President of the United States, *i.e.,* a national election – not merely a federal election, with completely different time frames and analysis. On its face, *Anderson v. Celebrezze* did not concern the Constitutional provision at issue, *U.S. Const. Art. I, § 4, cl 1.* Here, state and local elections are at issue, not Presidential elections. Moreover, and contrary to the undisputed facts herein, the State of Ohio in *Celebrezze* "did not advance any administrative reasons" for their deadline; nor was the deadline necessary to count and verify

27

petition signatures and allow time for signatures challenges through litigation. *Id.* at 783, 800. In addition, *Anderson* preceded both UOCAVA and MOVE.

As opposed to offering new evidence, Plaintiffs argued *Tashjian v. Republican Party of Connecticut*, for the first time in their Motion to Reconsider. 479 U.S. 208 (1986). A proper analysis of *Tashjian* does not change the results in this case. *Tashjian v. Republican Party of Connecticut* did Plaintiffs no good, either. In *Tashjian*, "appellant [Secretary of State] claim[ed] that the administration of the system contemplated by [appellee, the Republican Party] rule would simply cost the State too much." 479 U.S. 208, 218 (1986).

That is not the basis of Defendant's undisputed factual assertions herein. To the contrary, there are competing First Amendment concerns, as set forth by the Trial Court in its Order and by Defendant in their Response to the Motion for Summary Judgment and at oral argument. Plaintiffs did not dispute the factual assertions made by Defendant. This case was no mere matter of cost. The District Court previously concluded that there was no single test for challenges to election laws, so prior cases cannot simply dictate a result. As the Court held in *Tashjian*, "Constitutional challenge[s] to specific provisions of a State's election laws . . . cannot be resolved by any litmus paper test . . ." *Tashjian*, 479 U.S. at 213 citing *Anderson,* 460 U.S. at 789. The Trial Court's decision on the merits of the law is not inconsistent with *Tashjian* nor the result therein.

28

As agreed by Plaintiff-Appellant at oral argument, Jt. App. 328, there were no disputed issues of material fact, only questions of law. Any error in the Court's consideration of the case was harmless error that did not affect the substantial rights of any of the parties. Fed. R. Civ. P. 61.

It was proper to deny Appellant's "Motion to Reconsider and Alter or Amend the Order" pursuant to Fed. R. Civ. P 59(e). These motions are successful only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id. see also Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007), *certiorari denied* 552 U.S. 1040. Such a motion is only appropriate when "a manifest error affects 'the correctness of the judgment.'" *Norman v. Arkansas Dept. of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (citations omitted).

Appellant used the motion to continue rearguing his case, but did not attach a new affidavit or assert any new facts. Fed. R. Civ. P. 59(c). There was no new law meriting a change in the Trial Court's decision, nor was there an alleged intervening change in the law. *See North River Ins. V. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1219 (3rd Cir. 1995). There was no clear error of law, and no alleged manifest injustice. *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 72 (1st Cir. 2003).

Appellate Case: 15-3558     Page: 36     Date Filed: 02/23/2016 Entry ID: 4370810

## CONCLUSION

For the foregoing reasons, the Court should affirm the U.S. District Court,

granting Summary Judgment to Defendant Appellee, Secretary of State.

Respectfully submitted,

**HONORABLE MARK MARTIN,
SECRETARY OF STATE FOR THE
STATE OF ARKANSAS, in his
Official Capacity
DEFENDANT-APPELLEE**

/s/ AJ Kelly

**AJ Kelly
General Counsel and
Deputy Secretary of State
PO Box 251570
Little Rock, AR 72225-1570
Phone: (501) 682-3401
Fax: (501) 682-1213**

*Attorney for Appellee*

## CERTIFICATE OF SERVICE

I, AJ Kelly, hereby certify that I electronically filed the foregoing Brief of

Appellee with the Clerk of the Court using the CM/ECF system on the 22nd day of

February, 2016, for service upon the attorneys of record

/s/ AJ Kelly

_____

AJ Kelly

30

## **CERTIFICATE OF COMPLIANCE**

I, AJ Kelly, hereby certify that this Appellee's Brief has been scanned for viruses and the brief is free of known viruses. The Brief complies with the type-volume limitation as set by Rule 32(a)(7)(B) of the Federal Rules of Civil Procedure. Times New Roman 14 Point Font in MS Word was used. This brief contains 7989 words.

/s/ AJ Kelly

_____

AJ Kelly

Appellate Case: 15-3558    Page: 38    Date Filed: 02/23/2016 Entry ID: 4370810